UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GREAT AMERICAN E&S INSURANCE COMPANY, | : |
| | : |
| Plaintiff, | : Civil Action No.:_____ |
| | : |
| vs. | : |
| | : |
| LIBERTY INDUSTRIES, INC., | : |
| | : |
| Defendant. | : |

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff Great American E&S Insurance Company ("Great American"), for its complaint against Liberty Industries, Inc. ("Liberty") states as follows:

1.      This is an action for declaratory relief pursuant to 28 U.S.C. § 2201, *et. seq.*, to determine the parties' rights and obligations under contracts of liability insurance identified below, in connection with claims against Liberty for injury and/or death arising from exposure to fungi.

## The Parties

2.      Liberty is a corporation organized under the law of the state of Connecticut and maintains its principal place of business in Connecticut.

3.      At all times relevant, Liberty was engaged in the business of designing and building "cleanrooms" and related contamination control systems.

4.      Great American is a corporation organized under the law of the state of Delaware, and maintains its principal place of business in Cincinnati, Ohio.

5.      Great American issued to Liberty as a Named Insured certain contracts of liability insurance, as more fully identified below.

## Jurisdiction & Venue

6.      Jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1332(a)(1), in that

Liberty and Great American are citizens of different states and the amount in controversy

exceeds $75,000.

7.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391, in that

Liberty resides in and/or is otherwise subject to personal jurisdiction in this district.

## Factual Background

8.      Beginning in or around 2006, Liberty was engaged by New England

Compounding Pharmacy, Inc. d/b/a New England Compounding Center ("NECC") to design and

install cleanrooms at NECC's facility in Framingham, Massachusetts.

9.      Liberty in fact designed and installed cleanrooms at NECC's Framingham,

Massachusetts facility.

10.     In or around September 2012, numerous individuals in a number of states

contracted fungal meningitis, and a number of people died from this illness.

11.     In response to the outbreak of fungal meningitis, various state and federal

agencies undertook an immediate investigation to determine its cause.

12.     The cause of the fungal meningitis outbreak was determined to be contaminated

vials of an injectable steroid, methylprednisolone acetate, manufactured by NECC at its

Framingham, Massachusetts facility.

13.     Numerous lawsuits were subsequently filed against NECC and other defendants,

purporting to state claims arising from the fungal meningitis outbreak and/or for injuries caused

by exposure to fungus-contaminated drugs compounded, manufactured and distributed by NECC

and/or its affiliates (collectively, the "Fungal Injury Claims").  On February 14, 2013, the

2

Judicial Panel on Multidistrict Litigation issued an order pursuant to 28 U.S.C. § 1407

transferring and consolidating various cases pending in federal courts, to a Multidistrict

Litigation in the United States District Court for the District of Massachusetts, styled *In re New

England Compounding Pharmacy, Inc. Products Liability Litigation,* MDL No. 1:13-md-2419

(the "MDL").  Additional cases have been transferred to the MDL since its creation in February

2013.

      14.    Pursuant to one or more case management orders, the MDL Court established a

procedure for the filing of a "Master Complaint" against certain defendants in the MDL

litigation.  The Master Complaint was filed on November 5, 2013.  (*See* MDL Dkt. Entry No.

545).  Liberty is named as a defendant in the Master Complaint.

      15.    A true and correct copy of the Master Complaint filed in the MDL is attached

hereto as Exhibit A.

      16.    The MDL Court also established a procedure by which individuals seeking to

assert Fungal Injury Claims against NECC and other defendants, including Liberty, may file a

"Short Form Complaint" adopting all or part of the allegations of the Master Complaint.  Certain

plaintiffs have followed this procedure by filing complaints adopting portions of the Master

Complaint; other plaintiffs have filed individual complaints that do not rely upon the Master

Complaint but generally contain allegations similar to those set forth in the Master Complaint.

      17.    Liberty has been named as a defendant in the following lawsuits, some of which

have been transferred to the MDL, and some of which remain pending in state courts but which

may be transferred to the MDL at a later date:

        a.    *Cavanaugh, et. al v. Liberty Industries, Inc., et. al*, Docket No. 1:13-cv-

            10486 (D. Mass.);

b. *Fusco, et. al v. New England Compounding Pharmacy, Inc., et. al*, Docket No. 1:13-cv-10603 (D. Mass);

c. *York v. New England Compounding Pharmacy, Inc.*, *et. al*, Docket No. 1:13-cv-10626 (D. Mass.);

d. *Driscoll v. Ameridose, LLC, et. al*, Docket No. 1:13-cv-13233 (D. Mass.);

e. *Montague v. Ameridose, LLC, et. al*, Docket No. 1:13-cv-13230 (D. Mass.);

f. *Phillips v. Ameridose, LLC, et. al*, Docket No. 1:13-cv-13232 (D. Mass.);

g. *Copsey v. New England Compounding Pharmacy, Inc., et. al*, Docket No. 1:13-cv-10503 (D. Mass.);

h. *Geisler v. New England Compounding Pharmacy, Inc.*, *et. al*, Docket No. 1:13-cv-10357 (D. Mass.);

i. *Ginther v. New England Compounding Pharmacy, Inc., et. al*, Docket No. 1:13-cv-10363 (D. Mass.);

j. *Klemm v. New England Compounding Pharmacy, Inc., et. al*, Docket No. 1:13-cv-10371 (D. Mass.);

k. *Lambert v. New England Compounding Pharmacy, Inc., et. al*, Docket No. 1:13-cv-10351 (D. Mass.);

l. *Oblinger v. New England Compounding Pharmacy, Inc., et. al*, Docket No. 1:13-cv-10355 (D. Mass.);

m. *Pavlekovich v. New England Compounding Pharmacy, Inc., et. al*, Docket No. 1:13-cv-10373 (D. Mass.);

n.      *Schrock v. New England Compounding Pharmacy, Inc.*, *et. al*, Docket No. 1:13-cv-10370 (D. Mass.);

o.      *Tallman v. New England Compounding Pharmacy, Inc., et. al*, Docket No. 1:13-cv-10349 (D. Mass.);

p.      *Wyres v. New England Compounding Pharmacy, Inc., et. al,* Docket No. 1:13-cv-10356 (D. Mass.);

q.      *Chambers v. New England Compounding Pharmacy, Inc., et. al*, Docket No. L-44-14 (N.J. Super., Cumberland County, Law Div.); and

r.      *Snead v. New England Compounding Pharmacy, Inc., et. al*, Docket No. L-45-14 (N.J. Super., Cumberland County, Law Div.).

18.     True and correct copies of the complaints identified in the foregoing paragraphs 17.a. through 17.r. are attached hereto as Exhibits B through S, respectively.  In each of these actions (the "Underlying Actions"), the plaintiffs generally allege that they suffered personal injuries as a result of exposure to fungal-contaminated drugs manufactured and/or distributed by NECC, and manufactured and/or compounded in "cleanrooms" designed and built for NECC by Liberty.

19.     Liberty has also voluntarily agreed to engage in a formal mediation program established by the MDL Court.  (*See* MDL Dkt. Entry Nos. 394, 580).  On information and belief, the parties to that mediation are in the process of establishing procedures for the conduct of the mediation, and scheduling the mediation session(s).  Pending completion of mediation, formal discovery against Liberty in the MDL is effectively stayed, but as part of the mediation process Liberty (and other defendants participating in mediation) is required to produce

information concerning its assets and net worth, as well as copies of liability insurance policies, reservation of rights and/or denial letters from insurers.  (*See* MDL Dkt. Entry No. 394).  On information and belief Liberty has complied with this production requirement.

20.     Liberty has requested that Great American agree to defend and indemnify it in connection with the Underlying Actions, including providing defense counsel to represent Liberty's interests in connection with the mediation referenced above, under the contracts of insurance identified in this Complaint for Declaratory Relief.

21.     Although it has concluded that coverage is not available for numerous reasons, Great American has agreed to assume Liberty's defense pursuant to a complete reservation of rights and non-waiver agreement.

22.     Great American now brings this action, seeking a ruling that Great American has no obligation to defend and/or indemnify Liberty in connection with the Underlying Actions, under the Great American policies identified herein.

23.     Great American is entitled to a declaration that it has no obligation to defend or indemnify Liberty under the Great American policies identified herein, with respect to the claims against Liberty in the Underlying Actions.

**<u>The Primary Policies</u>**

24.     Great American issued the following contracts of liability insurance to Liberty, which were in force during the policy periods indicated (the "Primary Policies"):

| Policy Number | Policy Term |
|---|---|
| PL 2387754-00 | 1/20/11 – 1/20/12 |
| PL 2387754-01 | 1/20/12 – 1/20/13 |
| PL 2387754 02 | 1/20/13 – 1/20/14 |

25.     True and correct copies of the Primary Policies are attached hereto as Exhibits T, U and V.

6

26.     Subject to additional terms, conditions, limitations and exclusions, the Primary

Policies provide coverage for "bodily injury" that takes place during the policy period, and

which is caused by an "occurrence."

27.     The Primary Policies contain an endorsement entitled the "Designated Work

Exclusion" (the "Designated Work Exclusion") that provides as follows:

Exclusion – Designated Work

This endorsement modifies insurance provided under the
following:

Commercial General Liability Coverage Part
Products/Completed Operations Liability Coverage Part

Schedule

Description of your work:     Installation

* * *

This insurance does not apply to "bodily injury"…included in the
"products-completed operations hazard" and arising out of "your
work" shown in the Schedule.

* * *

"Your work":

a.  means:

    (1)  Work or operations performed by you or on your behalf;
       and

    (2)  materials, parts or equipment furnished in connection with
       such work or operations.

b.  Includes:

    (1)  Warranties or representations made at any time with respect
       to the fitness, quality, durability, performance or use of
       "your work," and

7

(2)  The providing of or failing to provide warnings or instructions.

28.     The Primary Policies contain an endorsement entitled the "Organic Pathogen

Exclusion" (the "Organic Pathogen Exclusion") that provides as follows:

A.  The following exclusion is added to paragraph 2., Exclusions, of Section I. Coverages Bodily Injury and Property Damage Liability

2.  Exclusions

This insurance does not apply to:

Organic Pathogens

a.  Any "bodily injury" which would not have occurred, in whole or in part, but for the actual, alleged, threatened, or suspected inhalation of, exposure to, discharge, dispersal, seepage, migration, growth, release or escape, or contact with any "organic pathogen."
* * *
This exclusion applies regardless of the circumstances of or leading to such actual, alleged, threatened, or suspected inhalation, ingestion, exposure, contact, existence, or presence.

* * *

C.  The following definition is added to the Definitions section:

"Organic pathogen" means any bacteria including Escheria coli, Salmonella, Listerium, microbe, virus, fungi, mold, mildew, mycotoxins, spores, or their scent or byproducts.

29.     The Primary Policies contain an endorsement entitled "Professional

Liability/Testing and Consulting Errors and Omissions Exclusion" (the "Professional Liability

Exclusion") that provides as follows:

This insurance does not apply to:

8

1. Any "bodily injury"…arising out of the rendering or failure to render any professional services.

2. Any "bodily injury"…. arising out of:

    a.  an error, omission, defect or deficiency in:

        1.  any test performed; or

        2.  an evaluation, a consultation or advice given by or on behalf of any insured.

* * *

30.    The Primary Policies contain an endorsement entitled the "Total Pollution Exclusion Endorsement" (the "Total Pollution Exclusion") that provides, in relevant part, as follows:

> Exclusion f. under Paragraph 2, Exclusions of Section I – Coverage A – Bodily Injury and Property Damage Liability is replaced by the following:
>
> This insurance does not apply to:
>
> f.  Pollution
>
>     (1)  "Bodily injury" or "property damage" which would not have occurred in whole or in part but for the actual, alleged or threatened discharged, dispersal, seepage, migration, release or escape of "pollutants" at any time
>
>             * * *
>
> "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.

31.    The Primary Policies contain and endorsement entitled the "Pre-Existing Damage Exclusion" (the "Pre-Existing Damage Exclusion") that provides as follows:

This insurance does not apply to:

1.  Any loss or claim for damages related to "bodily injury" or "property damage" whether known or unknown:

    a.  which first occurred prior to the inception date of this policy…; or

    b.  which is, or is alleged to be, in the process of occurring as of the inception date of this policy…

2.  Any loss or claim for damages arising out of or related to "bodily injury" or "property damage,' whether known or unknown, which is in the process of settlement, adjustment or "suit" as of the inception date of this policy…

    We will have no duty to defend any Insured against any loss, claim, "suit" or other proceeding alleging damages arising out of or related to "bodily injury" or "property damage" to which this endorsement applies.

32.    The Primary Policies include an endorsement entitled "Deductible Liability Insurance," which states that the deductible is $5,000 for "Bodily Injury, Personal and Advertising Injury and Property Damage Liability Combined" (the "Deductible Endorsement").

33.    The deductible applies on a "per claim" basis.

### The Excess Policies

34.    Great American issued the following contracts of excess liability insurance to Liberty as the Named Insured (the "Excess Policies"):

| Policy Number | Policy Term |
|---|---|
| XS 2388167-00 | 4/18/11 – 1/20/12 |
| XS 2388167-01 | 1/20/12 – 1/20/13 |
| XS 2388167 02 | 1/20/13 – 1/20/14 |

35.    True and correct copies of the Excess Policies are attached hereto as Exhibits W, X and Y.

36.     Subject to additional terms, conditions, limitations and exclusions, the Excess

Policies provide coverage pursuant to the following grant of coverage:

> We will pay on behalf of the Insured the amount of "loss" covered
> by this insurance in excess of the "Underlying Limits of Insurance"
> shown in Item 5. of the Declarations, subject to Insuring
> Agreement Section II., Limits of Insurance.  Except for the terms,
> conditions, definitions, and exclusions of this policy, the coverage
> provided by this policy will follow the "first underlying
> insurance."

37.     The "Underlying Limits of Insurance" in Item 5 of the Declarations are the limits

of the respective Great American Primary Policies identified above.

38.     The term "loss" is defined in the Excess Policies as follows:

> "Loss" means those sums actually paid in the settlement or
> satisfaction of a claim which you are legally obligated to pay as
> damages after making proper deductions for all recoveries and
> salvage.

39.     The term "first underlying insurance" is defined in the Excess Policies as the

Primary Policies identified in Item 5 of the Declarations.

40.     The Excess Policies expressly disclaim any duty to defend, pursuant to the

following terms:

> III.  Defense
>
>    A.  We will not be required to assume charge of the
>        investigation of any claim or defense of any suit against
>        you.
>
>    B.  We will have the right but not the duty, to be associated
>        with you or your underlying insurer or both in the
>        investigation of any claim or defense of any suit which in
>        our opinion may create liability on us for "loss."  If we
>        exercise such right, we will do so at our own expense, but
>        not after the limits of this policy are exhausted.

41.     The Excess Policies include the following  "Limitation of Coverage to

Specified Locations Endorsement":

> This policy only applies to liability arising out of:
>
> A.   an "Insured's" operations at the premise(s) listed below:
>
>> 1.  FDACBER Laboratories at White Oak
>> 2.  Silver Spring, MD
>
>> * * *
>
> or
>
> B.   any premise(s) newly acquired by an "Insured," if such
>      acquisition is reported to us within 30 days of the acquisition
>      of such ownership or control by any "Insured" from a prior
>      owner that is not an "Insured."

42.     The Excess Policies include the following  "Limitation of Coverage – Specified

Operations Endorsement":

> Limitation of Coverage – Specified Operations
>
> Schedule
>
> FDACBER Laboratories at White Oak
> Silver Spring, MD
>
> This insurance applies only to operations specifically described in
> the Schedule as being covered.  You agree to reimburse us for any
> expenses, including claim expenses and defense costs which might
> be required to expend, when it is discovered that a claim arose out
> of an operation not specifically designated in the Schedule as being
> covered.

43.     Liberty purchased the Excess Policies specifically and solely to provide coverage

on the terms set forth in those polices, for work performed by Liberty at the Food and Drug

Administration Center for Biologics Evaluation and Research ("FDACBER") at White Oak,

Silver Spring, Maryland.  Liberty therefore understands and agrees that the Excess Policies do not provide coverage for claims against it arising from or related to its work for NECC.

44.    The Excess Policies include the following "Absolute Mold Exclusion":

Absolute Mold Exclusion

Regardless of cause, whether by proximate cause, efficient cause, sole cause, contributing cause, or as resulting damage from any such cause or causes, this policy does not apply to any loss, demand, claim or suit arising out of or related in any way to mold, mildew, fungus, spores or any similar or related biological entity, however designated.

The Company shall have no duty of any kind with respect to any such loss, demand, claim or suit.

This exclusion applies to all coverages under this policy.

45.    The Excess Policies include the following "Pollution Exclusion":

This policy does not apply to:

B.  Any liability, including, but not limited to settlements, judgments, costs, charges, expenses, costs of investigations, or the fees of attorneys, experts, or consultants arising out of or in any way related to:

1.  the actual, alleged or threatened presence, discharge, dispersal, seepage, migration, release or escape of "pollutants" however caused;

* * *

As used in this exclusion "pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including but not limited to, smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste material.  Waste material includes materials which are intended to be or have been recycled, reconditioned or reclaimed.

## COUNT I
### (Declaratory Judgment re 2011-2012 Policy Term)

46.     Great American incorporates here as if set forth at length the foregoing paragraphs 1 through 45.

47.     The Primary Policies and the Excess Policies provide coverage, if at all, only for "bodily injury" that occurs during the policy period.

48.     The complaints in the Underlying Actions allege injuries that took place after the expiration of the Great American primary and excess policies that were in force for the term January 20, 2011 through January 20, 2012, and April 18, 2011 through January 20, 2012, respectively (the "2011-2012 Policies").

49.     The 2011-2012 Policies do not provide coverage for the claims against Liberty in the Underlying Actions because, among other reasons, "bodily injury" is not alleged to have occurred during that policy period.

50.     Great American is therefore entitled to a declaratory judgment that it has no duty to defend and/or indemnify Liberty in connection with the claims in the Underlying Actions, under the 2011-2012 Policies.

## Count Two
### (Declaratory Judgment re 2013-2014 Policy Term)

51.     Great American incorporates here as if set forth at length the foregoing paragraphs 1 through 50.

52.     The Primary Policies and the Excess Policies provide coverage, if at all, only for "bodily injury" that takes place during the policy period.

53.     The complaints in the Underlying Actions do not allege that the plaintiffs in those actions sustained bodily injury after the inception of the Great American policies in force from January 20, 2013, through January 20, 2014 (the "2013-2014 Policies").

54.     The Underlying Actions do not include any allegations describing any "bodily injury" that occurred during the period of the 2013-2014 Policies.

55.     Great American is entitled to a declaratory judgment that it has no duty to defend and/or indemnify Liberty in connection with the claims in the Underlying Actions, under the 2013-2014 Policies.

## Count Three
### (Declaratory Judgment re Exclusions)

56.     Great American incorporates here as if set forth at length the foregoing paragraphs 1 through 55.

57.     Coverage for the claims against Liberty in the Master Complaint is barred by the exclusions identified above in the Primary Policies and the Excess Policies.

58.     Great American is entitled to a declaratory judgment that it has no duty to defend and/or indemnify Liberty in connection with the claims against it in the Underlying Actions, because one or more of the aforementioned exclusions bar coverage.

## Count IV
### (Limitations of Coverage in Excess Policies)

59.     Great American incorporates here as if set forth at length the foregoing paragraphs 1 through 58.

60.     The claims against Liberty in the Underlying Actions are unrelated to the work and/or operations identified on the "Limitation of Coverage – Specified Operations

Endorsement" and the "Limitation of Coverage to Specified Locations Endorsement" in the Excess Policies.

61.     Liberty purchased the Excess Policies specifically and solely to provide coverage on the terms set forth in those polices, for work performed by Liberty at the Food and Drug Administration Center for Biologics Evaluation and Research ("FDACBER") at White Oak, Silver Spring, Maryland.  Liberty therefore understands and agrees that the Excess Policies do not provide coverage for claims against it arising from or related to its work for NECC.

62.     Great American is therefore entitled to a declaratory judgment that it has no duty to defend and/or indemnify Liberty under the Excess Policies, in connection with the claims against it in the Underlying Actions.

**Count V**
**(No "Occurrence" re Certain Claims)**

63.     Great American incorporates here as if set forth at length the foregoing paragraphs 1 through 62.

64.     Certain of the allegations of the complaints in the Underlying Actions do not allege an "occurrence" as that term is used and defined in the policies.  By way of example, but not limitation, the Master Complaint alleges that Liberty refused NECC's requests to repair allegedly defective work, and willfully and knowingly failed to abide by certain laws and regulations and otherwise engaged in deceptive acts.

65.     Coverage is not available for claims that do not arise from an "occurrence."  Great American is entitled to a declaratory judgment that it has no duty to defend and/or indemnify Liberty in connection with such claims.

**Count VI**
**(Number of "Occurrences")**

66.     Great American incorporates here as if set forth at length the foregoing paragraphs 1 through 65.

67.     Coverage under the Primary Policies is provided, if at all, subject to a limit of liability of $1 million per "occurrence" and $2 million in the aggregate.

**68.**     All of the Fungal Injury Claims against Liberty constitute a single "occurrence," and therefore to the extent Great American is obligated to indemnify Liberty in connection with such claims (which is denied), Great American's liability is limited to a single per-occurrence limit as set forth in the policies.

**Count VII**
**(No Coverage for Punitive Damages)**

69.     Great American incorporates here as if set forth at length the foregoing paragraphs 1 through 68.

70.     Some or all of the complaints in the Underlying Actions  purport to state a claim against Liberty for punitive or exemplary damages.

71.     Such awards are uninsurable as a matter of law and/or public policy.

72.     Great American is therefore entitled to a declaration that it has no obligation to defend and/or indemnify Liberty with respect to any claim, demand or award of punitive or exemplary damages.

**Count VIII**
**(Reimbursement of Deductible)**

73.     Great American incorporates here as if set forth at length the foregoing paragraphs 1 through 72.

74.     Coverage under the Great American Policies is subject to a deductible of $5,000 per claim.

75.     Defense costs and indemnity payments are included in the deductible.

76.     Great American has advanced and/or will advance Liberty's costs of defense in connection with the Underlying Actions, under a reservation of rights and non-waiver agreement.

77.     Liberty is obligated to reimburse Great American for the defense costs advanced, as well as any indemnity payment made, up to $5,000 per claim.

78.     Great American is therefore entitled to a judgment declaring that Liberty must reimburse Great American the lesser of the amount of the defense costs and indemnity payments incurred by Great American, or $5,000 times the number of claims asserted against Liberty.

WHEREFORE, Great American respectfully requests that the Court enter judgment in its favor and against Liberty:

(a)     Declaring that Great American has no duty to defend and/or indemnify Liberty in connection with the claims against it in the Underlying Actions;

(b)     Declaring that Liberty is obligated to reimburse Great American for defense costs advanced by Liberty and indemnity payments made by Great American, in the amount of $5,000 per claim or the amount actually incurred by Great American, whichever is less; and

(c)     Awarding Great American such other and further relief as the Court may deem just and proper.

Respectfully submitted,


*/s/ John P. Malloy*
John P. Malloy (CT26008)
ROBINSON & COLE, LLP
280 Trumbull Street
Hartford, CT 06103
Phone:  (860) 275-8200
Fax:  (860) 275-8299
jmalloy@rc.com

Attorneys for Great American E&S
Insurance Company

19